# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE ALLEN, executrix of the estate of | : | |
| Donald G. Allen, et al., | : | |
| Plaintiffs | : | Civil Action No. |
| | : | 3:09-cv-372 (CFD) |
| v. | : | |
| | : | |
| GENERAL ELECTRIC CO., et al. | : | |
| Defendants. | : | |

## RULING ON MOTION TO REMAND

The plaintiff, Lorraine Allen, brought this action on behalf of herself and in her capacity as executrix of the estate of Donald G. Allen, against General Electric Co. ("GE"), Viad Corp. ("Viad"), and Buffalo Pumps, Inc. ("Buffalo Pumps"), in Connecticut Superior Court in January 2009. Donald Allen worked for General Dynamics Corporation, Electric Boat Division as a sheet metal worker from 1957–1963 and as a Department Planner from 1963–1992. The complaint alleges that he developed mesothelioma because he was exposed to asbestos-containing products manufactured by the defendants during those relevant time periods. The plaintiff claims that the defendants violated their duty under Connecticut law to warn Allen of the dangers of asbestos exposure. On March 6, 2009, Buffalo Pumps filed a notice of removal pursuant to 28 U.S.C. § 1442(a). Viad and GE filed motions for joinder in this removal on March 17, 2009 and March 16, 2009, respectively. The plaintiff now seeks to remand the case to state court.[1] For the following reasons, the plaintiff's motion is denied and the motions for

---

[1] Both Viad and Buffalo Pumps have filed motions to stay the proceedings pending a decision on the motion to remand. These motions, however, are now rendered moot and are therefore denied.

joinder are granted.

**I.**   **Discussion**

**A.**   **Legal Standard for Removal under 28 U.S.C. § 1442(a)(1)**

Section 1442(a) of Title 28 of the United States Code provides for the removal of any

civil action against "the United States or any agency thereof or any officer (or any other person

acting under that officer) of the United States . . . sued . . . for any act under color of such office."

28 U.S.C. § 1442(a)(1).  Removal of cases against government contractors is proper under this

statute where three requirements are met.  Specifically, the government contractor must prove (1)

that it has a colorable federal defense, (2) that it acted under the direction of a federal officer or

agency, and (3) that a causal nexus exists between the plaintiffs' claims and "what the

[contractor] has done under asserted official authority."  Mesa v. California, 489 U.S. 121, 131

(1989); Nesbiet v. Gen. Elec. Co., 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005).  The statute creates

an exception to the well-pleaded complaint rule; even if a plaintiff's complaint does not, on its

face, raise a federal question, federal jurisdiction is proper where a defendant establishes these

three requirements.  Jefferson County, Ala. v. Acker, 527 U.S. 423, 430-31 (1999).  Although the

defendant seeking removal bears the burden of proving federal jurisdiction, "the policy favoring

removal should not be frustrated by a narrow, grudging interpretation" of the statute.  Arizona v.

Manypenny, 451 U.S. 232, 242 (1981) (citation and quotation marks omitted); see Jefferson

County, 527 U.S. at 431 ("We . . . do not require the officer virtually to win his case before he

can have it removed." (quotation marks omitted)).  Additionally, the Second Circuit has recently

held that "the [removal] statute as a whole must be liberally construed."  Isaacson v. Dow Chem.

Co., 517 F.3d 129, 136 (2d Cir. 2008).

**B.      Analysis**

**1.      Colorable Federal Defense**

Buffalo Pumps claims that it is immune from state tort liability on the ground that it was serving as a military contractor at the time of Allen's claimed exposure to asbestos.  This "military contractor defense," if established, presents a colorable federal defense in both design defect and failure to warn cases.  Boyle v. United Techs., Corp., 487 U.S. 500, 512 (1988); In re Joint E. & S. Dist. N.Y. Asbestos Litig. (Grispo v. Eagle-Picher Indus., Inc.)., 897 F.2d 626, 629 (2d Cir. 1990).  "The military contractor's defense is premised on federal displacement of state law where state law significantly conflicts with the federal interest embodied in the federal government's sovereign immunity for discretionary functions."  In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 839 (2d Cir. 1992).  To show such a conflict, and hence to assert this federal defense, a defendant must prove three elements: (1) "the United States approved reasonably precise specifications" for the military equipment supplied by the contractor; (2) "the equipment conformed to those specifications; and (3) the [contractor] warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States."  Boyle, 487 U.S. at 512.  In a failure to warn case, the defendant must establish the first prong of this test by showing that "whatever warnings accompanied a product resulted from a determination of a government official, and thus that the Government itself 'dictated' the content of the warnings meant to accompany the product."  Grispo, 897 F.2d at 631 (internal citations omitted).  In accordance with the policy underlying the removal statute, the defendant does not need to fully prove its federal defense on the merits to justify removal.  Nesbiet, 399 F. Supp. 2d at 210-11 (citing Jefferson County, 527 U.S. at 431).

The Court finds that Buffalo Pumps has established a colorable military contractor defense.  To prove the "reasonably precise specifications" requirement, Buffalo Pumps must establish that the government actively participated in creating the specifications for the products and warning labels the defendants supplied, and that the government imposed these specifications on the defendants.  In re Agent Orange Prod. Liab. Litig., 304 F. Supp. 2d 404, 434 (E.D.N.Y. 2004).  Buffalo Pumps has satisfied this burden through numerous affidavits.  First, Buffalo Pumps provides the affidavit of Rear Admiral Roger B. Horne, Jr., Retired, who served in the Navy from 1956 to 1991, concentrating in the areas of ship design, engineering, construction, overhaul, and inspection.  (Affidavit of Roger B. Horne, Jr., Feb. 24, 2009, at ¶¶ 1–2 ("Horne Aff.").)  During his tenure in the Navy, Horne was also responsible for maintaining naval ship military specifications and monitoring compliance with the specifications by vendors and contractors.  (Id. at ¶ 3.)  Horne avers that the Navy wrote and issued detailed specifications for all equipment intended to be used on a Navy vessel, including what materials could be used and what communications could be affixed on the equipment.  (See id. ¶¶ 9–11.)  Horne further asserts that these detailed specifications did not leave room for an individual manufacturer to make a determination about including a warning.  (See id. ¶¶ 12–15.)  The affidavit of Rear Admiral David P. Sargent, Jr., Retired, echoes Horne's statements, noting that the U.S. Navy "had precise specifications as to the nature of any markings, communications or directions affixed to or made a part of any equipment supplied by manufacturers."  (Affidavit of David P. Sargent, Jr., Apr. 7, 2009, at ¶ 48 ("Sargent Aff.").)  At this preliminary stage, the affidavits of Horne and Sargent sufficiently establish that the U.S. Navy imposed "reasonably precise specifications" on Buffalo Pumps.

-4-

To prove the second prong of the military contractor defense, Buffalo Pumps must show that the products it supplied to the Navy conformed to the Navy's specifications. In re Agent Orange, 304 F. Supp. 2d at 434. "As a matter of law, satisfaction of [this element] requires accurate conformity with specifications or government approval of the delivered product." Id. at 435. Essentially, Buffalo Pumps must demonstrate that the Navy "received exactly what it sought." Lewis v. Babcock Indus., Inc., 985 F.2d 83, 89 (2d Cir. 1993). According to the affidavit of Martin K. Kraft, Production Manager of Buffalo Pumps, "[a]ll pumps supplied by Buffalo Pumps to the Navy were built in accordance with the Navy specifications." (Affidavit of Martin K. Kraft, Mar. 10, 2009, at ¶ 8.) Although Kraft was not employed by Buffalo Pumps during much of the time relevant to this litigation, his affidavit attests to review of relevant documents and information regarding matters that occurred prior to his employment. See id. at ¶ 2; see also Viscosi v. Am. Optical Corp., 07cv1559 (SRU), 2008 U.S. Dist. LEXIS 74875, at *11–*12 (D.Conn. Sept. 29, 2008) (holding that the Kraft affidavit satisfied the second element of the military contractor defense under Boyle). Additionally, the Sargent affidavit notes that the Navy would not have permitted the equipment suppliers to place asbestos warnings on the equipment supplied in the 1950s or 1960s. (Sargent Aff. at ¶ 53.) Therefore, Buffalo Pumps has satisfactorily demonstrated, for the purposes of this motion, that the products they supplied to the Navy conformed to Navy specifications.

The third prong of the military contractor defense requires Buffalo Pumps to show that, at the time of Allen's alleged exposure to asbestos, Buffalo Pumps did not fail to warn the Navy of any dangers associated with asbestos that were known to Buffalo Pumps but not to the Navy. Boyle, 487 U.S. at 512. Buffalo Pumps satisfies this element through the affidavit of Dr. Samuel

A. Forman, who, through a review of applicable documentary evidence, establishes that "[a]s early as 1922, the Navy recognized . . . the health hazards associated with airborne asbestos dust and the appropriate protective measures to prevent asbestos exposure." (Affidavit of Dr. Samuel A. Forman, Apr. 23, 2009, at ¶¶ 14–19, 29–38 ("Forman Aff.").) Furthermore, Forman notes that because the Navy's knowledge concerning asbestos was state of the art, "it would be unreasonable to assume that the Navy would have accepted any advice" from equipment manufacturers regarding asbestos safety precautions. (Id. at ¶ 44.) The plaintiff's evidence supports this conclusion. The affidavit of Captain R. Bruce Woodruff, Retired, notes that the "U.S. Navy did play the primary role in gathering information and examining the hazards of asbestos." (Affidavit of Capt. Robert Bruce Woodruff, Feb. 25, 2009, at 8 ("Woodruff Aff.").) Thus, Buffalo Pumps has established, for the purposes of this motion, that it did not fail to warn the Navy of any dangers regarding asbestos known to Buffalo Pumps but not known to the Navy.

Allen argues that Buffalo Pumps cannot establish a reasonably colorable military contractor defense because the Navy never specifically told the defendant to omit warnings regarding asbestos. In support, the plaintiff offers the affidavit of Woodruff who proffers that, given the presence of warning labels about other hazardous materials and dangerous procedures, "the U.S. Navy could very well have considered" including an asbestos warning label in the manuals, if the suggestion had been made. (See id. at 12.) This argument, however, more appropriately addresses issues to be resolved at trial, rather than on a motion to remand. See Allen v. Gen. Elec. Co., No. 09-CV-0497J, 2009 WL 2766583, at *4 (D.Conn. Aug. 27, 2009) (dismissing Plaintiffs' argument because it went beyond what needed to be resolved in a motion

for remand and into what needed to be resolved at trial).[2]

The plaintiff also cites to the 1956 Uniform Labeling Program for Hazardous Industrial Chemicals and Materials ("ULP") as evidence that warning labels are governed by state law. This standard, however, does not apply to product manufacturers such as Buffalo Pumps. See Contois v. Able Indus. Inc., 523 F. Supp. 2d 155, 162 (D.Conn. 2007); see also Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 104 n.3 (D.Conn. 2007) (noting that the ULP "governed the labeling of hazardous chemicals by Naval personnel, not outside product manufacturers"). Although the Woodruff affidavit states that this "interpretation" of the ULP is "open to challenge," he also states that this program was "no doubt never intended as a technical specification for a vendor."  (Woodruff Aff. at 18.)  Thus, the plaintiff has not rebutted Buffalo Pump's colorable showing of a federal defense.

Therefore, in light of the above evidence, Buffalo Pumps has established a colorable federal defense.

## 2.    Requirement that GE "Acted Under" a Federal Officer or Agency

"The words 'acting under' are to be interpreted broadly . . . ."  Isaacson, 517 F.3d at 136. To meet this requirement, Buffalo Pumps must show that the Navy controlled the warnings it could provide for its products, and that this Navy control prevented Buffalo Pumps from

---

[2] It should also be noted that the decisions the plaintiff cites in support of the motion to remand are inapplicable to the situation here. First, In re Joint Eastern & Southern District New York Asbestos Litigation., 897 F.2d 626 (2d Cir. 1990), discusses the applicable showing that a defendant must make on a motion for summary judgment.  On removal, the burden on the defendant is lower.  See Jefferson County, 527 U.S. at 431.  Second, the plaintiff cites to decisions from the District of Massachusetts and other Circuit Courts which require the defendant to show that the Navy specifically prohibited the defendant from complying with the state law duty to warn.  This standard, however, is not the standard utilized within the Second Circuit.  See Isaacson v. Dow Chem. Co., 517 F.3d 129, 136 (2d Cir. 2008).

fulfilling its state law duty to warn of the hazards related to asbestos exposure.  Nesbiet, 399 F. Supp. 2d at 212.  As discussed above, Buffalo Pumps sufficiently established, for the purposes of this motion, that the Navy completely controlled the manufacture and design of every piece of equipment on its ships, and that the Navy would not have permitted contractors, such as Buffalo Pumps, to place warning labels on products containing asbestos.  Therefore, this evidence establishes that Buffalo Pumps was "acting under" the direction of the Navy by not providing warnings.  See Contois, 523 F. Supp. 2d at 162; see also Allen, 2009 WL 2766583.

Allen fails to sufficiently rebut this evidence.  Although the plaintiff does offer a set of military specifications ("milspecs") that the plaintiff argues demonstrates that warnings could be provided in the manuals, these milspecs explicitly state that warnings in the manuals should be provided "as sparing[ly] as is consistent with real need."  See Military Specification, Manual, Service (Instruction Books) for Shipboard Electrical and Mechanical Equipment, MIL-M-15071D (SHIPS), at § 3.3.6 (June 6, 1961).  Sargent's affidavit supports that these "warning" terms were to be used sparingly, and notes that it was his personal experience that the warnings were only utilized to refer to safe operation of equipment, not health related issues.  (Sargent Aff. at ¶¶ 54–55.)  Moreover, these milspecs were promulgated four years after Allen had begun work at the Electric Boat Division.  Therefore, Buffalo Pumps has sufficiently demonstrated that it "acted under" the direction of the Navy when it supplied the Navy with equipment without warnings about asbestos exposure.[3]  See Contois, 523 F. Supp. 2d at 161; Machnik, 506 F. Supp.

_____

[3] The Court recognizes that another Court in this district, addressed similar issues and nearly identical facts on a motion to remand the case to state court, Fortier v. AMPCO, 3:07-cv-00005 (WWE), 2007 U.S. Dist. LEXIS 16108 (D.Conn. Mar. 7, 2007).  Although that Court granted the plaintiffs' motion to remand, in Dematties v. AMCAT Corp., 3:08CV116 (WWE), 2008 U.S. Dist. LEXIS 86717, at *6 n.2 (D.Conn. Oct. 27, 2008), U.S. District Court

2d at 104.

### 3.    "Causal Nexus" Requirement

Finally, to show the existence of a "causal nexus," Buffalo Pumps must show that Allen's claims arose "out of the acts done by [the defendant] under color of federal authority."  Mesa, 489 U.S. at 131-32.  "The hurdle erected by this requirement is quite low . . . ."  Isaacson, 517 F.3d at 137.  Specifically, the defendants must show that the "government controlled which warnings [the defendants were] allowed to provide . . . and thereby precluded the warnings at issue from being given."  Densberger v. United Techs. Corp., 297 F.3d 66, 75 (2d Cir. 2002); cf. Isaacson, 517 F.3d at 137–38 ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties.").  In determining whether this causal connection exists, courts should credit the defendants' theory of the case.  See Isaacson, 517 F.3d at 137.

As discussed above, the Horne affidavit avers that contractors such as Buffalo Pumps were required to, and did, fully comply with all of the detailed specifications prepared by the Navy, including warnings.  (See Horne Aff., at ¶¶ 5, 10–15.)  Carrying out the specifications in detailed government contracts has previously been held sufficient to establish causation.  See Isaacson, 517 F.3d at 138 (noting that because the action that plaintiffs challenged, the production of dioxin, would naturally have occurred during the performance of the government-specified duties, causation was sufficiently demonstrated); Allen v. CBS Corp., No. 3-09-cv-1113 (JCH), 2009 WL 4730747, at *3 (D.Conn. Dec. 1, 2009).  Therefore, Buffalo Pumps

---

Judge Eginton declined to follow Fortier, noting that Fortier was decided with "a less developed record and without the benefit of Isaacon's clear articulation of the proper standard" of review.

sufficiently established the "causal nexus" between its actions and the plaintiff's claims for purposes of this motion.

## II.     <u>Conclusion</u>

The Court finds that Buffalo Pumps has met its burden to justify federal officer removal of this suit from the Connecticut Superior Court.  Accordingly, Allen's motion to remand [Dkt. # 19] is DENIED, and the case will remain in federal court.[4]  Both Viad's motion for joinder [Dkt. # 18] and GE's motion for joinder [Dkt. # 15] are GRANTED.   The defendants' motions to stay [Dkts. # 24 & # 26] are DENIED as moot.

SO ORDERED this   9th   day of March 2010, at Hartford, Connecticut.


                                        /s/Christopher F. Droney
                                        **CHRISTOPHER F. DRONEY**
                                        **UNITED STATES DISTRICT JUDGE**

---

[4]Since the Court finds that Buffalo Pumps presented an adequate showing to justify removal pursuant to 28 U.S.C. § 1442(a)(1), and because the Court may exert supplemental jurisdiction over all remaining claims and defendants in the suit under 28 U.S.C. § 1367(a), the Court does not address the arguments of defendants Viad and GE in opposition to the motion to remand.  See Machnik, 506 F. Supp. 2d at 105 n.4.